**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 09-22659-MC-UNGARO/SIMONTON**

IN THE MATTER OF THE APPLICATION
OF WINNING (HK) SHIPPING CO. LTD.,

      **Petitioner,**

FOR DISCOVERY IN AID OF FOREIGN
PROCEEDINGS PURSUANT TO 28 U.S.C.
§ 1782 OR ALTERNATIVELY TO PRESERVE
EVIDENCE IN AID OF ANTICIPATED
LITIGATION UNDER FED. R. CIV. P. 27
_____/

**ORDER DENYING SHIP MANAGEMENT SERVICE'S**
**MOTION TO QUASH ORDER GRANTING**
**PETITION FOR DISCOVERY**

      Presently pending before the Court is Ship Management Service's Motion to

Quash Order Granting Petition for Discovery (DE # 4).  The matter is fully briefed (DE ##

5, 7) and has been referred to the undersigned Magistrate Judge (DE # 3).  A hearing was

held on the Motion.  Based upon the record as a whole and the arguments made by

counsel at the hearing, the Motion to Quash Order Granting Petition for Discovery is

DENIED.  As set forth in detail below, although this is a close question, the undersigned

concludes that the discovery is properly sought in aid of the foreign arbitration

proceeding pursuant to 28 U.S.C. § 1782; although it is not permitted under the terms of

Fed. R. Civ. P. 27.

      **I.  BACKGROUND**

      This matter was initiated when Petitioner Winning (HK) Shipping Co. Ltd.

("Winning") filed an Ex Parte Verified Petition for Discovery in Aid of Foreign

Proceedings pursuant to 28 U.S.C. § 1782 and/or Fed. R. Civ. P. 27 seeking assistance in

aid of foreign and international arbitration proceedings that Winning intended to

commence against Ystwyth Marine Ltd. ("Ystwyth") related to an incident that occurred aboard the M/V Ystwyth ("Vessel" or "Ship") (DE # 1).  According to the Petition, in July of 2009, Winning, a British Virgin Islands company, and Ystwyth, a Liberian business, entered into a time charter agreement whereby 75,200 metric tons of Bauxite were loaded onto the M/V Ystwyth in Indonesia.  The M/V Ystwyth is a vessel owned by Ystwyth and managed by Ship Management Services ("SMS") which is located in Coral Gables, Florida.  After the cargo was loaded onto the ship, the anchor windlass lost power which prevented the anchor from being raised and eventually the vessel ran aground.  A few days later, a portion of the cargo was discharged from the vessel, and the vessel was refloated and moved to Singapore to undergo repairs.  Winning then hired two entities to survey the ship but according to the Petition, Ystwyth would not allow the inspection to occur.  A few weeks later, Winning attempted to have another entity survey the ship but purportedly Ystwyth again refused inspection.  Winning also claims that Ystwyth refused to furnish copies of certain documents relevant to the grounding incident to Winning.

Winning then filed a Petition with this Court seeking to conduct discovery pursuant to 28 U.S.C. § 1782 and/or alternatively to obtain documents to preserve testimony under Federal Rule of Civil Procedure 27, in preparation for the anticipated arbitration between Winning and Ystwyth related to the incident on the vessel. Specifically, Winning sought to review various documents purportedly in the possession and control of SMS and to depose Dileep Sawant, SMS' superintendent of the ship managers, and/or the person most knowledgeable about the management of the vessel, all prior to the initiation of arbitration.  The District Judge in this matter granted Winning's Ex Parte Petition (DE # 2), and SMS then filed a Motion to Quash Order

Granting Petition for Discovery (DE # 4).[1]  Winning then filed its Opposition to Motion to Quash (DE # 5) and SMS filed its Reply (DE # 7).

A hearing was held on the Motion wherein SMS and Winning presented oral argument on SMS's Motion to Quash Order Granting Petition for Discovery.  SMS then submitted Supplemental Authority in Support of its Motion.

## II.  THE POSITIONS OF THE LITIGANTS

### A.  The Position of SMS

In its Motion to Quash, SMS argues that 28 U.S.C. § 1782 does not apply to foreign private arbitrations akin to the arbitration likely to occur between Winning and Ystwyth. SMS asserts that private arbitration is not a "proceeding in a foreign or international tribunal," as contemplated by section 1782, and thus that statute does not apply to this case.  In addition, SMS argues that Winning in actuality is seeking to circumvent the discovery limitations usually applicable to arbitration proceedings by obtaining discovery prior to instituting the agreed upon arbitration in London. SMS argues that pursuant to the time charter agreement, the arbitration will be governed by English law and English arbitration law does not permit American-style discovery, including depositions, and instead asserts that the Parties will have to follow the rules of the London Maritime Arbitrators Association ("LMAA").

In support of its Motion, SMS has submitted the affidavit of Richard Malcolm Gunn, an attorney from London who specializes in admiralty law and who has extensive experience in arbitration of Charter Parties under English Law (DE # 4-2).  The Affidavit reiterates the arguments made by SMS in its Motion to Quash and states that in English

---

[1] The Court Order granting Winning's Ex Parte Petition was the proposed order drafted and submitted by Winning (DE # 2).

arbitration, Winning would not be entitled to discovery prior to service of submissions to the arbitrator (DE # 4-2 at 4). Mr. Gunn also asserts that the English legal system does not operate on the basis of joint witness depositions but rather allows either party to obtain statements from witnesses without the other party being present (DE # 4-2 at 5). SMS also submitted an Affidavit from Dileep Sawant, the employee that Winning sought to depose. In that Affidavit, Mr. Sawant confirms that SMS is a Florida business located in Miami-Dade County, Florida and that he has no intention of leaving that company's employ (DE # 7-2).

Finally, SMS asserted in its papers as well as at the hearing, that Winning was not entitled to conduct a deposition pursuant to Federal Rule of Civil Procedure 27 because it failed to make a showing that it seeks to perpetuate testimony that is known by Winning and likely to be lost, rather than to conduct discovery to determine what information SMS or its employees possess.

B. The Position of Winning

In its *Ex Parte* Petition, Winning asserted that the anticipated arbitration satisfies the threshold requirements of section 1782 and contended that Winning was therefore entitled to court-ordered discovery pursuant to that section. In addition, Winning argued that the discretionary factors that a court may consider in assessing whether section 1782 assistance is warranted also weighed in favor of permitting Winning to conduct discovery in this jurisdiction. Finally, Winning contended that it was entitled to take depositions and obtain documents pursuant to Fed.R.Civ.P. 27, which provides that depositions to perpetuate testimony may be taken prior to an action being initiated, in certain circumstances.

In its opposition to SMS' Motion to Quash, Winning reiterated its argument that

4

the arbitration at issue is within the reach of section 1782 primarily because the arbitration decision is subject to judicial review.  Winning points to portions of the Arbitration Act 1996 as providing the basis for any arbitration award to be challenged in court on the basis of procedural, jurisdictional or substantive grounds.  In addition, Winning has submitted the affidavit of Timothy Houghton wherein Mr. Houghton disagrees with SMS' characterization of  the availability of discovery in English arbitration proceedings and specifically references the London Maritime Arbitrators' Association ("LMAA") rules as providing that a party may request disclosure prior to the submissions to arbitration (DE # 5-3 at 10).  The Affidavit further asserts that nothing in the LMAA rules prohibit depositions and that English procedural law imposes no restriction on a party seeking evidence by any lawful means in other jurisdictions.  In the Affidavit, Mr. Houghton further confirms that Winning correctly asserted in its Petition that English courts have the ability to review arbitration awards.

Further, Winning contends that the Court properly permitted Winning to preserve testimony through a deposition pursuant to Federal Rule of Civil Procedure 27 because Winning specifically sought to depose Mr. Dileep Sawant, a supervisor of SMS with information about the Vessel's anchor and windlass and also sought to obtain specific documents related to the Vessel.  Finally, Winning asserts that it needs the crew list and documents concerning the incident in order to conduct its own investigation in preparation for the arbitration.

III.  LAW & ANALYSIS

A.  Assistance to Foreign and International Tribunals and to Litigants Before Such Tribunals Pursuant to 28 U.S.C. § 1782

Requests for judicial assistance in obtaining discovery for use in foreign

proceedings are governed by 28 U.S.C. § 1782, which provides,

> (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a *foreign or international tribunal*, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court...

(*Emphasis added*).  Thus, pursuant to this statute, a district court has the authority to grant an application for judicial assistance if the following statutory requirements are met: (1) the request must be made by "a foreign or international tribunal," or "any interested person"; (2) the request must seek evidence, which is either the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance. 28 U.S.C. § 1782(a).

In addition, if it is determined that discovery is authorized by section 1782, a court should ascertain, in its discretion, whether discovery should nevertheless be denied, modified, or ordered as requested. *See Intel Corporation v. Advanced Micro Devices*, 542 U.S. 241 (2004).  In making that determination, a court should weigh several factors involving the nature and extent of the discovery. *Id. See, infra. at 17.*  Thus, the undersigned will first examine whether Winning has met the threshold requirements to entitle it to assistance pursuant section 1782, and, if so, whether the discretionary factors weigh in favor of permitting Winning to obtain the discovery it seeks.

1. *Intel Does Not Mandate the Inclusion of Private Arbitration Proceedings As Within the Scope of Section 1782*

With respect to the availability of section 1782 to authorize discovery in this case, it is not disputed that three of the four requirements are met:  Winning is an interested entity; it is seeking evidence in the form of testimony and documents; the discovery sought is located in this district.  However, the litigants disagree about whether section 1782 reaches foreign arbitration proceedings between private parties; and, specifically, whether the anticipated arbitration between Ystwyth and Winning qualifies as a "foreign or international tribunal" under that statute.

The crux of this dispute concerns whether the 2004 ruling of the United States Supreme Court in *Intel Corporation v. Advanced Micro Devices*, 542 U.S. 241 (2004) compels the conclusion that section 1782 applies to private arbitration proceedings.  In *Intel*, the United States Supreme Court clarified the application of section 1782.  The Court expressly and unequivocally resolved certain areas of confusion by holding that: (1) there is no "foreign discoverability requirement" which must be satisfied before obtaining discovery pursuant to section 1782;[2] (2) there is no requirement that the foreign proceeding be "pending" or even "imminent" as long as the proceeding is "within reasonable contemplation"; and, (3) the Commission of the European Communities qualifies as a tribunal and a complainant before that Commission is an "interested person" entitled to seek relief under section 1782.  *Intel*, 542 U.S. at 253-54.  Although the Court in *Intel* provided much guidance regarding the interpretation of

---

[2]  With respect to his holding, the Supreme Court expressly overruled the contrary precedent in the Eleventh Circuit Court of Appeals in *In Re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1988). *Intel*, 542 U.S. at 253-54.

section 1782, the Court was not called upon to determine the precise issue before this Court, *i.e.* whether section 1782 applies to private foreign arbitration proceedings.

Before discussing the ramifications of *Intel* with respect to the case at bar, it is useful to examine the cases decided before *Intel*, which expressly held that section 1782 did *not* apply to foreign private arbitration proceedings.  At the outset, the undersigned notes that this issue has not been addressed by the Eleventh Circuit Court of Appeals and therefore those decisions are not binding precedent regardless of the impact of *Intel* on their continued vitality.

Significantly, prior to the Supreme Court's ruling in *Intel,* at least two Circuit Courts of Appeal held that section 1782 did not apply to arbitration proceedings held before private tribunals.  In *Nat'l Broadcasting Co., Inc. v. Bear Stearns & Co., Inc.*, 165 F.3d 184 (2nd Cir. 1999) ("NBC"), for example, the Second Circuit held that section 1782 did not apply to commercial arbitration in Mexico governed by the rules of a private organization in France because the arbitration did not qualify as a "proceeding in a foreign or international tribunal".  In reaching its conclusion, the *NBC* court first found the term "foreign or international tribunal" to be ambiguous and noted that although there was a specific reference to a "foreign administrative tribunal or quasi-judicial agency" in the legislative history of the 1964 revisions to section 1782, there was no such reference to private arbitration tribunals in that history. *Id.* at 189-190, *citing* H.R. Rep. No. 88-1052 at 9 (1963) and S.Rep. No. 88-1580 at 3788(1964).  Further, the court generally examined the policy behind arbitration and opined that the efficiency and cost effectiveness usually associated with private arbitration proceedings would likely be compromised if the broad discovery permitted in federal court, and allowed by section 1782, were permitted in private arbitration matters. *Id*. at 190-91.  Finally, the court

emphasized that private arbitrations generally arise from private agreements wherein the contracting parties have agreed that discovery in the arbitration, if any, would be controlled by the rules of the arbitrators rather than the discovery rules of federal court. *Id*. at 191.

Similarly, in *Republic of Kazakhstan v. Biedermann International*, 168 F. 3d 880 (5th Cir. 1999), the Fifth Circuit cited to *NBC,* and also found the term "foreign or international tribunal" to be ambiguous, and opined that although Congress' inclusion of the word "tribunal" to the 1964 version of section 1782 intended to extend the reach of that statute beyond conventional courts to "foreign administrative and quasi-judicial agencies", Congress did not intend to extend the scope to international commercial arbitration. *Id*. at 881-2.  The court in *Biedermann* explained that to read section 1782 to extend to private arbitration agreements would yield a result not likely intended by Congress because it would: 1) assure broader discovery in aid of foreign private arbitration than is afforded in domestic arbitration; and, 2) place a burden on the arbitration process that would undermine the speedy, economical and effective means of that manner of dispute resolution. *Id*. at 883.

In *Intel,* however, the Supreme Court seemingly opened the door to a wider interpretation of section 1782 by applying it to an action before an executive and administrative body. *Intel*, 542 U.S. at 250.  Specifically, the Court opined that it was within section 1782's scope to provide assistance to an entity that filed an anti-trust complaint against an industry competitor with the Directorate General-Competition of the European Commission, the body charged with enforcing European Union competition laws and investigating alleged violations of those laws.  In so doing, the Court observed that Congress had expanded the scope of section 1782 to reach not just

9

"judicial proceedings", but "proceeding[s] in a foreign or international tribunal" which Congress understood to include "administrative and quasi-judicial proceedings abroad." *Id.* at 258.  After examining the function and procedures of the European Commission, and observing that a decision by that body was subject to judicial review by the Court of First Instance, the Court held that it had no reason to exclude the European Commission from the reach of section 1782, to the extent that it acted as a first-instance decision maker. *Id.*

Since the *Intel* decision, courts have split as to whether the extension of section 1782 into purely private arbitrations is warranted on the basis that those fora meet the "tribunal" definition of the statute.  In *In re Application of Roz Trading Ltd.*, 469 F. Supp. 2d 1221 (N.D. Ga. 2006), the district court opined that, in light of the *Intel* decision, an international commercial arbitral panel located in Austria was a tribunal within the meaning of section 1782 because the body acted as a first-instance decision maker and issued decisions both responsive to a complaint and reviewable in court. The court noted that in *Intel*, the Supreme Court cited to a law review article, albeit in dicta, that stated that tribunals under section 1782 included, among other things, "arbitral tribunals," *Id*. at 1224, and therefore concluded that the term "tribunal" was not ambiguous.

Similarly, in *In Re Application of Hallmark Capital Corp.* 534 F. Supp. 2d 951 (D. Minn. 2007), the district court held that pursuant to the *Intel* ruling, section 1782 now applied to private tribunals.  The *Hallmark* court acknowledged, however, that the Supreme Court in *Intel* did not expressly address the issue of private arbitrations and also, did not disapprove of the rulings in *Biederman*n or *National Broadcasting Co.,* both of which held that section 1782 did not apply to private arbitrations. *Id*. at 955.

Other courts conversely have held that the *Intel* decision did not extend the reach of section 1782 to private arbitral forums.  Most notably, in *In Re Application of Operadora DB*, 2009 WL 2423138 (M.D. Fla. August 4, 2009), the District Court declined to adopt a Magistrate Judge's report recommending that section 1782 be applied to a private arbitration constituted under the International Chamber of Commerce's International Court of Arbitration.  In *Operadora*, the court examined the case law in the post-*Intel* era and concluded, like the Court in *NBC*, that the term "foreign or international tribunal" as used in section 1782 was ambiguous. The *Operadora* Court then examined the plain language and legislative history of the statute, and applied the "functional analysis" test to the arbitration body to determine whether the private arbitral forum at issue qualified as a foreign or international tribunal under section 1782. *Id.* at *8-9.  The court focused its analysis on the true function of the private arbitration entity, including whether the decision of the arbitration panel was subject to judicial review, what the origin and authority for the panel were, and whether the arbiter could collect evidence and enter a binding decision. *Id.*  The court concluded that because the arbitration body in the case issued decisions that were not judicially reviewable, derived its power from a private agreement and was tasked with resolving disputes independently of state-sponsored tribunals, it did not qualify as a foreign or international tribunal under section 1782.  *Id.* at 10.  The court further expressed its doubts that the Supreme Court in *Intel* would have overruled the Second Circuit's decisions in *NBC* and the Fifth Circuit's ruling in *Biedermann* without even a reference to either case. *Id.* at 11.

Similarly, in *La Comision Ejecutiva Hidroelecctrica del Rio Lempa v. El Paso, Corp.*, 617 F. Supp. 2d 481 (S.D. Tex. 2008), a district court rejected the argument that *Intel* extended the reach of section 1782 to private international arbitration proceedings

11

and emphasized that the Supreme Court in *Intel* did not address that issue either in its holding or in dicta. *Id*. at 485.  The court also noted the distinction between the body in *Intel*, which performed a "quasi-adjudicative proceeding before review by true judiciary powers", and a private arbitral tribunal which is entirely separate from the judiciary. *Id.* at 485-86.  This decision was affirmed by the Fifth Circuit Court of Appeals, which held that *Intel* had not overruled *Biedermann* since private arbitration was not an issue in *Intel*; and, the Court was therefore bound by the prior panel's decision in *Biedermann.* *El Paso Corp. v. La Comision Ejecutiva Hidroelecctrica del Rio Lempa*, 2009 WL 2407189 (5th Cir. Aug. 6, 2009).[3]

Finally, in *In re an Arbitration in London, England*, 626 F. Supp. 2d 882 (N.D. Ill. 2009), the District Court denied a motion to compel the deposition of a reinsurer related to a private arbitration being held in London, England pursuant to 28 U.S.C. § 1782. While the arbitration clause in that case included a waiver of court review of the arbitration decision, the court also noted that generally private arbitrations are alternatives to, rather than precursors to formal litigation. *Id.* at  886.  The court also concluded that the Supreme Court's decision in *Intel* did not mandate the inclusion of private arbitral tribunals within the scope of that statute. *Id.* at 885.

The undersigned concurs that the holding in *Intel* does not *necessarily* extend the

_____

[3]  It is interesting to note, however, that the request for discovery made in Texas in *El Paso* was a companion to a request filed in the United States District Court for the District of Delaware for additional discovery in connection with the same arbitration proceeding.  The District Court in Delaware found that section 1782 does apply to private foreign arbitrations and ordered the discovery. *La Comision Ejecutiva Hidroelecctrica del Rio Lempa v. Nejapa Power Co.*, Case No. 08-135-GMS (DE # 17 Oct. 14, 2008).  That opinion was vacated as moot on appeal to the Third Circuit Court of Appeals due to the completion of the arbitration proceedings during the pendency of the appeal. *La Comision Ejecutiva Hidroelecctrica del Rio Lempa* v. *Nejapa Power Co.*, Case No. 08-3518 (3rd Cir. 2009).  It is cited here only to illustrate the stark disparity amount the courts regarding the application of section 1782 to private arbitrations.

reach of section 1782 to purely private arbitrations.  First, as conceded by almost all of the post-*Intel* rulings, the Supreme Court in *Intel* never addressed the issue of whether a private arbitration forum qualified as a tribunal under section 1782.  In addition, the tribunal in *Intel* was not chosen pursuant to a written agreement between the parties to settle their disputes through private arbitration, but rather was initiated by the unilateral submission of a complaint by a competitor of one of the parties.  Finally, the entity in *Intel* in which the complaint was filed was a quasi-governmental body charged with enforcing and investigating violations of certain European Union anti-trust laws.

In this regard, the undersigned agrees with the court in *OJSC Ukrnafta v. Carpatsky Petroleum Corporation*, 2009 WL 2877156 *4 (D. Conn. Aug. 27, 2009), which stated "a reasoned distinction can be made between arbitrations such as those conducted by...a body operating the United Nations and established by its member states and purely private arbitrations established by private contract." (quoting *In re Arbitration in London,* 2009 WL 1665936, at *3 (citation omitted)*. Accord In re Oxus Gold PLC,* 2007 WL 1037387, at *5 (D.N.J. Apr.2, 2007*).  Consistent with this analysis, the Court in *NBC* stated, "In sum, the legislative history reveals that when Congress in 1964 enacted the modern version of section 1782 it intended to cover governmental or inter-governmental arbitral tribunals and conventional courts and other state-sponsored adjudicatory bodies." *NBC* at 190.  Thus, simply put, the undersigned concludes that the holding in *Intel* did not change this conclusion.  Rather, the Supreme Court in *Intel* did not have cause to address any distinctions between private or quasi-governmental entities for purposes of section 1782, because there was no non-governmental or non-state-sponsored body at issue in that case.  Thus, although the Supreme Court may ultimately determine that section 1782 should encompass all private arbitrations, such a

conclusion is not compelled by the holding in *Intel*.  Rather, *Intel* suggests that courts should examine the nature of the arbitral body at issue to determine whether it functions as a "foreign tribunal" for purposes of section 1782.  Having concluded that *Intel* does not mandate the inclusion of all foreign private arbitration proceedings as within the scope of section 1782, it is necessary to examine the particular proceeding at issue in the case at bar, using the guidance provided by *Intel*.

> **2.** *Under a Functional Analysis Test, the Proceedings at Bar Fall within the Scope of Section 1782*

Applying the functional analysis test used by several post-*Intel* courts to the case at bar, the undersigned concludes that although certain aspects of the anticipated arbitration are akin to a purely private arbitration, the arbitral body in this instance actually acts as a first-instance decision maker whose decisions are subject to judicial review, and thus operates as a foreign tribunal for purposes of section 1782.

First, there is no question that the arbitration likely to occur between Ystwyth and Winning arises pursuant to a clause in a private agreement between two purely private parties.  In addition, it is not disputed that the arbitrators in any anticipated arbitration will be able to collect evidence and issue a decision on the merits of the dispute.

However, as correctly argued by Winning, in *Intel* the Supreme Court primarily focused on the judicial reviewability of the decisions of the European Commission in determining that the body was a foreign or international tribunal under section 1782.  In the instant case, the Charter Party Agreement between Ystwyth and Winning contains an arbitration clause which provides,

> Should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at London, one to be appointed by each of the parties hereto; and the third by the two so chosen; their

decision, or that of any two of them, shall be final and for the
purpose of enforcing any award this agreement may be made
a rule of the Court.

(DE #1, Ex Parte Verified Petition, Ex. B at paragraph 17, 84).  Although the Charter Party

Agreement does not specifically reference the rules that will apply to the arbitration,

Winning appended the Arbitration Act 1996 (of England) to the Petition for Discovery,

and asserted that under §§ 68 and 69 of that Act, courts may review not only

jurisdictional issues related to arbitration, but may also consider whether an error was

made in a point of law by the arbitrators (DE # 1 at 16 and DE # 1, Exhibit H).  Similarly, in

the Motion to Quash, SMS states, "...the parties would be subject to the disclosure

provisions under the London Maritime Arbitrators Association ("LMAA") Rules." (DE # 4

at 7).  The website of the London Arbitrators Maritime Association provides, *inter alia*,

How can an award be challenged or appealed against?

There may be a challenge to an award if a serious
irregularity, as defined in s.68(2) of the Arbitration 1996
can be shown.  Such challenges are rarely made, however,
because of the difficulty of proving the relevant grounds, and
few of those that are made are successful...

...An appeal on a question of law arising out of an award may
be made under s.69 of the Arbitration Act 1996.  However,
unless the parties agree, leave to appeal has first to be
obtained.

http://www.lmaa.org.uk/faq.aspx?pkFaqCatID=9e23fba1-55e9-4309-ade5-31aa2debd82e;

*see also* http://www.lmaa.org.uk/faq.aspx.

Thus, the Arbitration Act 1996 will apply to the arbitration between Winning and Ystwyth

whether the Parties proceed to arbitration pursuant to the Charter Party Agreement or

under the LMAA Rules.

Accordingly, the undersigned has reviewed the Arbitration Act 1996 (of England)

and agrees with Winning's assertion that the pursuant to § 68 and § 69 of that Act, the decisions of the arbitrators are reviewable by the English Courts.  In particular, § 68 of the Arbitration Act provides that a party to arbitration proceedings may apply to the court challenging an award for serious irregularity affecting the tribunal, proceedings or award. Similarly, § 69 provides that unless otherwise agreed by the parties, a party to arbitral proceedings may appeal to the court on a question of law arising out an award made in the proceedings.  Thus, under the Arbitration Act 1996, either party may challenge the arbitration panel's award in the English Courts.  *See, e.g.*, [2006] WL 3846364 *HBC Hamburg Bulk Carriers Gmbh & Co KG v. Tangshan Haixing Shipping Co Ltd. (The Fu Ning Hai)* (High Court of Justice Queen's Bench Division Commercial Court, Dec. 15, 2006) (reviewing substantive decisions by arbitrator related to maritime charter party agreement pursuant to §§ 68 and 69 of the Arbitration Act 1996).

Interestingly, in its Reply SMS does not assert that the decisions by the arbitrators in this instance are not subject to court review, but rather argues that Winning over-emphasizes the significance of judicial reviewablity in arguing that the arbitration at issue is a foreign tribunal under section 1782.  SMS reiterates that the arbitration between the parties herein is a private arbitration established by private contract and thus not subject to the statute (DE # 7 at 3).  However, while the Court in *Intel* did not address whether arbitrations before purely private bodies fell within the ambit of section 1782, it also did not address whether arbitrations that arise pursuant to private contracts are necessarily beyond the purview of that statute.

Hence, while the private arbitration body at issue is much like a purely private arbitration, the undersigned is constrained by the Supreme Court's ruling in *Intel* which does, in fact, place great emphasis on the availability of judicial review of the decision of

the dispute forum.  Thus, although the likely arbitration body herein, the London Maritime Arbitrators Association, is different from the quasi-judicial and/or agency body in *Intel*, the undersigned has found no case which expressly addressed the issue of judicial reviewability and held that where a decision by a dispute resolution body was reviewable by a court on both substantive and procedural grounds, that body was not an international tribunal under section 1782.  In this regard, the holdings in *Biedermann* and *NBC* are fully consistent with the *Intel* decision because there is no indication that either the decisions by the Arbitration Institute of the Stockholm Chamber of Commerce, the body at issue in *Biedermann,* or decisions by the International Chamber of Commerce, the body at issue in *NBC*, were reviewable by a court.  Even the post-*Intel* cases that have found that section 1782 did not apply to private arbitrations have also noted that the litigants in the particular arbitration have agreed to arbitrate their dispute in a forum that does not allow for review by a court, or have waived their right to a review.[4]  In this matter, under the Arbitration Act 1996, Ystwyth and Winning could have waived their right to judicial review, but did not, and therefore, the arbitration decisions may be appealed to the English Courts.

Accordingly, the undersigned concludes that to the extent the arbitration forum at issue is subject to the Arbitration Act 1996 (of England) or the Parties have agreed to follow the rules of the London Maritime Arbitrators Association, Winning is proceeding before a "foreign tribunal" and is therefore entitled to seek assistance from this court in

---

[4] The undersigned recognizes and appreciates footnote 4 of Winning's Response which acknowledges that the rules of the arbitral body in *El Paso* include judicial reviewability; however, the opinion of the Court did not address that issue. (DE # 5 at 11 n.4).

pursuant to section 1782.[5]

### 3. *Applying the Discretionary Factors, the Requested Discovery Is Appropriate*

As stated previously, if the threshold requirements of section 1782 are met, that statute "authorizes, but does not require, a federal district court to provide assistance...." *In re: Patricio Clerici*, 481 F.3d 1324, 1331 (11th Cir. 2007), *citing Intel Corp. v. Advanced Micro Devices, Inc.* 542 U.S. 241, 255 (2004); *see also United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001) ("[A] district court's compliance with a section 1782 request is not mandatory.").  Rather, a court may exercise its discretion as to whether to grant Section 1782 relief to a petitioner, and should consider the following factors in making that determination: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding,"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or court agency abroad to United States federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel,* 542 U.S., at *264-65.*

The undersigned has applied the discretionary factors and concludes that the factors weigh in favor of providing assistance to Winning in this matter.  First, there is no dispute that the entity SMS is not a participant to the anticipated arbitration

---

[5]  The undersigned is aware that the SMS correctly asserts that the broadened definition of "international tribunal" by the Supreme Court in *Intel* may result in additional discovery burdens that parties to private arbitration seek to avoid.  However, because courts may modify discovery requests based upon the discretionary factors set forth in *Intel*, such burdens may be significantly curtailed by a court, and thus allow parties to still reap the benefits of private arbitration.

proceeding.[6]  Second, as discussed above, the tribunal at issue is a first-instance

decision maker that renders decisions which are reviewable by an English court.  Also,

there has been no evidence or case law submitted that indicates that the foreign

government or court would be unreceptive to United States federal-court judicial

assistance.  Although SMS argues that some of the information sought by Winning

would not have to be disclosed until after the submissions to the arbitration panel were

made, that fact, standing alone, even if true, does not demonstrate that Winning's

request conceals an attempt to circumvent foreign proof-gathering restrictions or other

policies of a foreign country or the United States.[7]  In addition, SMS has not asserted,

nor does it appear, that Winning's requests are unduly intrusive or burdensome or would

cause SMS undue hardship.  Finally, Winning asserts that the request for assistance was

made in good faith and that the information is critical to its presentation of its position at

the arbitration.

        Thus, under the specific facts of the case at bar, the discretionary factors

enumerated above weigh in favor of permitting Winning to obtain the discovery it seeks,

--------

        [6] In *Intel,* the Supreme Court rejected arguments that a proceeding must be
pending or imminent in order for section 1782 to apply, rather, the Court held that
section 1782 may be invoked if the proceedings are "within reasonable contemplation."
*Id.* at 259.

        [7] To the extent that SMS' argument may be read as suggesting that an interested
party must meet a "foreign discovery requirement", prior to being entitled to assistance
under section 1782, that argument was soundly rejected by the Supreme Court in *Intel*.
Rather, the Court in *Inte*l made clear that an interested party does not need to
demonstrate, as a threshold matter, that the discovery sought would be obtainable in the
foreign jurisdiction or in an analogous United States proceeding, in order for that party
to be entitled to assistance under the statute. *Inte*l, 542 U.S., 259-265.  However, a court
may consider, as part of weighing the discretionary factors pertaining to the requested
discovery, whether the party's request pursuant to section 1782, is an attempt to
circumvent foreign proof-gathering restrictions or other policies of a foreign country or
the United States. *Id.* at 264-65.

and the undersigned therefore denies SMS's request to quash the Court's order granting Winning's request for discovery pursuant to section 1782.  The undersigned emphasizes, however, that in other cases, discovery may not be appropriate in connection with private arbitrations; or, may be severely curtailed.  The discovery sought in this case, however, was narrowly tailored and is appropriate.

### B.   Rule 27 Depositions to Perpetuate Testimony [8]

SMS also seeks to quash that portion of the District Court's Order that allows a deposition to be conducted and documents obtained pursuant to Federal Rule of Civil Procedure 27. SMS argues that a Rule 27 deposition is not appropriate under these facts because the Rule is designed to preserve testimony and not as a substitute for conducting discovery.  SMS contends that the crew members in this case are already in China and the deposition that Winning seeks to take is of a permanent resident of Miami-Dade County, and thus there is no evidence that his testimony will be lost prior to arbitration.  In support of its position, SMS has submitted an affidavit from the prospective deponent which states that he does not intend to depart from this district. Further, SMS states that it has repeatedly assured Winning that all the documents it seeks would be retained, and states that it has already provided Winning with the ship's engine room logs and deck logs, and a variety of plans of the ship.  Finally, at the hearing and in its Supplemental Filing after the hearing, SMS argued that Winning would not be able to bring a suit against Ystwyth in a United States court and thus has failed to satisfy the Rule 27 requirements on that ground as well.

Winning counters that Rule 27 is appropriate because it is "in need of the crew

---

[8] Although it is not necessary to reach this issue since the undersigned has concluded that the discovery will proceed pursuant to 28 U.S.C. § 1782 in aid of the arbitration proceedings, in the interest of completeness, the undersigned will do so.

list and documents concerning the incident so that it may undertake its own investigation in preparation for the arbitration and in defense of any claims which may be brought against it by other parties" (DE # 5 at 14).  In addition, Winning argues that it satisfies the other requirements under Rule 27 and thus should be allowed to depose two of SMS' employees.

Federal Rule of Civil Procedure 27, governs depositions to perpetuate testimony and provides,

(a) Before an Action Is Filed.

(1) Petition. A person who wants to perpetuate testimony about any matter cognizable in a United States court may file a verified petition in the district court for the district where any expected adverse party resides. The petition must ask for an order authorizing the petitioner to depose the named persons in order to perpetuate their testimony. The petition must be titled in the petitioner's name and must show:

(A) that the petitioner expects to be a party to an action cognizable in a United States court but cannot presently bring it or cause it to be brought;

(B) the subject matter of the expected action and the petitioner's interest;

(C) the facts that the petitioner wants to establish by the proposed testimony and the reasons to perpetuate it;

(D) the names or a description of the persons whom the petitioner expects to be adverse parties and their addresses, so far as known; and

(E) the name, address, and expected substance of the testimony of each deponent.

The Advisory Committee Notes to this Rule cite to *Arizona v. California*, 1934, 292 U.S. 341, and state that the rule offers a simple method of perpetuating testimony in cases where it is usually allowed under equity practice or modern statutes.  In *Arizona v.*

21

*California*, the Court explained that one of the factors that needed to be present in order to allow a bill of equity for the perpetuation of testimony was a showing that the taking of the testimony...[was] made necessary by the danger that it may be lost by delay. *Id*. at 347-48.  Similarly, in *Ash v. Cort*, 512 F.2d 909, 912 (3d Cir.1975), the court stated "Rule 27...is available in special circumstances to preserve testimony which could otherwise be lost." *Id*. at 912.

Moreover, in *In re Petition of Allegretti*, 229 F.R.D. 93 (S.D.N.Y. 2005), the court stated,

> Rule 27 affords relief only to those petitioners seeking to "perpetuate testimony." It is well-established in case law that perpetuation means the perpetuation of known testimony. In other words, Rule 27 may not be used as a vehicle for discovery prior to filing a complaint.

*Id*. at 94.  In the instant case, Rule 27 relief is not appropriate.  Winning has failed to demonstrate that the testimony is immediately necessary to prevent loss of that testimony, and has failed to demonstrate that it is not seeking Rule 27 relief for discovery purposes.  There is no indication that the persons that Winning seeks to depose or the documents it seeks will not be available at a future date, if Winning files suit in a United States court.[9]  Further, Winning has merely alluded to the subject matters about which it wishes to depose SMS employees, but fails to provide a "recitation of the precise testimony to be preserved." *In the Matter of Petition of Yamaha Motor Corp., U.S.A.,* 251 F.R.D. 97, 99 (N.D.N.Y. 2008).

Winning's reliance on *Mosseller v. United States*, 158 F.2d 380 (2nd Cir. 1946) is

---

[9] The litigants spent much time at the hearing arguing about whether Winning would be able to bring a suit in a United States Federal Court against Ystwyth in the future given Ystwyth's limited ties to the United States.  However, the undersigned need not address that issue as it is manifest that Winning cannot satisfy any of the other requirements of Rule 27.

unavailing as it is factually distinct from this matter.  In *Mosseller*, the petitioner, who intended to bring a personal injury law suit on behalf of her injured son, sought to preserve his testimony pursuant to Rule 27, where she was unable to bring a suit until she exhausted her administrative remedies and a medical opinion indicated that her son might die before that time elapsed. *Id.* at 381.  Winning's reasons for seeking a Rule 27 deposition are not remotely similar to the circumstances in that case; rather, establish that the testimony is sought to prepare for use in the London arbitration; and, it has virtually nothing to do with a lawsuit in a United States court.  As such, Winning is not entitled to a Rule 27 deposition.  Moreover, Winning does not assert that it is SMS' employees that Winning believes may be unavailable when, and if, a suit is filed in the United States.  Rather Winning seeks to take the deposition of the SMS employees to obtain the names and identities of the Vessel's crew members' who Winning believes may no longer be available if an action is filed in court. Thus, the depositions that Winning seeks to take are not to perpetuate testimony but rather are purely for discovery purposes.  Such is an improper use of Rule 27, which is intended to preserve testimony.

Finally, the undersigned notes that the refusal to permit discovery prior to the institution of a suit in this matter is temporary as Winning is free to seek discovery once the anticipated action has been filed in a United States court.  See *In re Chester County Electric, Inc.*, 208 F.R.D. 545 (E.D. Pa. 2002) (citing cases).  Accordingly, Winning is unable to satisfy the requirements of Rule 27, and thus a deposition is not permitted under the auspices of that rule.

IV.  **CONCLUSION**

For the reasons set forth above, the undersigned concludes that under the specific facts of this case, the discovery permitted by the Court's Order granting

Winning's Ex Parte Petition for Discovery (DE # 2) is appropriate pursuant to 28 U.S.C. § 1782, although it is not permissible pursuant to Fed.R.Civ.P. 27.  Therefore, it is hereby,

**ORDERED AND ADJUDGED** that Ship Management Service's Motion to Quash Order Granting Petition for Discovery (DE # 4) is **DENIED**.

**DONE AND ORDERED** in Chambers in Miami, Florida, on April  30, 2010.

ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

Copies furnished via CM/ECF to:
The Honorable Ursula Ungaro
        United States District Judge
All counsel of record